UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

COREY A. ASKEW,

                Plaintiff,

v.

BERRIEN, COUNTY OF et al.,

                Defendants.

_____/

Case No. 1:24-cv-1010

Honorable Robert J. Jonker

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. When Plaintiff submitted his complaint, he also submitted $403.00 towards the filing fee. In an order (ECF No. 3) entered on October 7, 2024, the Court informed Plaintiff that the full filing fee for a plaintiff not proceeding *in forma pauperis* is $405.00 and directed Plaintiff to submit the remaining $2.00 within 28 days. Plaintiff paid the $2.00 on October 30, 2024.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Rankin, Carl, O'Brien, Unknown Party #3, Unknown Party #16, Unknown Party #17,

and Unknown Party #18. The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Berrien County, Bailey, Burkes, Herbert, Magro, Scott Kuhl, Erin Kuhl, Will, Phillips, Dilpert, Helfman, Hyun, Unknown Party #1, Unknown Party #2, Unknown Party #4, Tarnowski, and Unknown Parties #5 through #15: (1) Plaintiff's claims under the Universal Declaration of Human Rights, various United Nations declarations, and the American Declaration of the Rights and Duties of Man; (2) Plaintiff's claims for declaratory relief; (3) Plaintiff's claims under Article I, § 8, clause 10 of the Constitution; (4) Plaintiff's claims under Article VI, clause 2 (the Supremacy Clause) of the Constitution; and (5) Plaintiff's Eighth Amendment claims.

Plaintiff's Fourth and Fourteenth Amendment claims for monetary damages against Defendants Berrien County, Bailey, Burkes, Herbert, Magro, Scott Kuhl, Erin Kuhl, Will, Phillips, Dilpert, Helfman, Hyun, Unknown Party #1, Unknown Party #2, Unknown Party #4, Tarnowski, and Unknown Parties #5 through #15 remain in the case. The Court will serve the complaint against Defendants Berrien County, Bailey, Burkes, Herbert, Magro, Scott Kuhl, Erin Kuhl, Will, Phillips, Dilpert, Helfman, Hyun, Unknown Party #1, Unknown Party #2, Unknown Party #4, Tarnowski, and Unknown Parties #5 through #15.

<u>**Discussion**</u>

## I.    **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events about which he complains, however, occurred at the Berrien County Jail (BCJ) in St. Joseph, Berrien County, Michigan, when Plaintiff was confined as a pretrial detainee. Plaintiff sues Berrien County itself, as well as Sheriff Paul Bailey; Lieutenants Cory Burkes, Scott Kuhl, Erin Kuhl, and Unknown Hyun; Sergeant/Lieutenant/Captain Celina Herbert; Sergeants/Lieutenants Nicholas Magro and

Unknown O'Brien; Sergeant J. Will; Deputies Cody Phillips, Unknown Dilpert, Unknown Helfman, J. Tarnowski, Meagan Rankin, and Unknown Carl. Plaintiff also names 18 different Unknown Parties. Unknown Parties #1 and #2 are referred to as doctors, Unknown Party #3 is referred to as a nurse, and Unknown Party #4 is referred to as Unknown Karen, a nurse supervisor. Unknown Parties #5 through #13 are referred to as Deputies, Unknown Party #16 is referred to as a Captain, Unknown Party #17 is referred to as the Undersheriff, and Unknown Party #18 is referred to as the Jail Administrator.

Plaintiff was arrested on March 18, 2022. (Compl., ECF No. 1, PageID.7.) When he was booked into BCJ, Plaintiff was housed in cell 0B00, which "does not contain a bunk, mattress, pillow, bedding, storage locker, desk[,] or chair, which required [P]laintiff to sit, sleep[,] and eat on the concrete floor." (*Id.*) At booking, Plaintiff refused to submit to a "mugshot photograph and fingerprinting." (*Id.*) Plaintiff was arraigned on March 23, 2022, at which time the district court judge issued an order directing that Plaintiff be fingerprinted and have DNA samples taken on or before April 1, 2022. (*Id.*) Plaintiff did not comply with that order. (*Id.*)

### 1.    Allegations Regarding Conditions of Confinement

On March 25, 2022, Plaintiff asked that he be moved to a general population area or that he be provided with a mattress, bedding, and towels, but his request was denied. (*Id.*) Plaintiff was "told that [he] would have to be classified first and that [he could not] be classified until [he] submitted to fingerprinting and mugshot photographs." (*Id.*) Plaintiff claims that his request was denied by Defendants Herbert, Hyun, and "several on duty deputies supervising the receiving/booking area." (*Id.*)

Between March 25 and June 24, 2022, Plaintiff repeatedly asked on a daily basis to be given a mattress and bedding, and to be moved to general population, but was denied. (*Id.*, PageID.8.) Plaintiff was told that "BCJ rules required that he remain under supervision in the

receiving/booking area until he submitted his fingerprints and could be classified and moved to a general population unit." (*Id.*) Plaintiff alleges that Defendants Bailey, Burkes, Herbert, Magro, Scott Kuhl, Erin Kuhl, Will, Hyun, and a "multitude of unidentified BCJ deputies" were the individuals who denied his requests. (*Id.*)

On April 12, 2022, Defendant Tarnowski and other unidentified deputies entered Plaintiff's cell while he was sleeping and told him to stand up so that they could confiscate all of his toilet paper. (*Id.*) Plaintiff alleges that he had been using the toilet paper "as an insulation barrier between himself and the cold concrete floor." (*Id.*) Deputy Tarnowski told Plaintiff that he was on a toilet paper restriction and could "continue to suffer" until he submitted to being fingerprinted. (*Id.*) Plaintiff was moved from cell 0B00 to 0A00. (*Id.*) During the "six[-]to[-]seven[-]week toilet paper restriction," Plaintiff received only 10 squares of toilet paper per day, his hot water was disconnected, he did not receive hygiene supplies or towels, and he "remained in the clothes he was arrested in until July 28, 2022." (*Id.*)

On June 24, 2022, non-party Nurse Karin Thomas directed that Plaintiff be provided with a mattress, blankets, towels, and a shower for medical reasons because Plaintiff had been repeatedly asking BCJ medical staff for pain medications, a mattress, bedding, and a shower. (*Id.*) Plaintiff alleges, however, that Defendants Will and Herbert overrode that order and "had the blanket confiscated." (*Id.*) Defendant Will told Plaintiff that "BCJ rules won't allow prisoners who refuse to fingerprint to receive a blanket and that if he wanted to be comfortable[,] he would have to be fingerprinted and classified." (*Id.*)

Plaintiff alleges that from March 18, 2022, through June 24, 2022, and then again from July 28, 2022, through August 3, 2022, he was confined in BCJ receiving/booking cells 0A00, 0B00, and 0C00. (*Id.*, PageID.9.) None of these cells had a bunk, mattress, bedding, towels,

toiletries, desk, chair, or storage container. (*Id.*) Plaintiff alleges that the lighting remained on 24 hours per day, the air temperature "constantly remained low and cold," and there was continuous excessive noise. (*Id.*) Plaintiff did not have any out-of-cell exercise or activities. (*Id.*) Plaintiff alleges that cells 0A00 and 0B00 had open showers without privacy dividers, giving "every person in the receiving/booking area a direct view of an inmate showering." (*Id.*) Moreover, the open toilet/sink only had a partial divider, giving "every person in the receiving/booking area a direct view of an inmate during his exercise of private biological functions." (*Id.*) Plaintiff was also required to sit, sleep, and eat on the "ice cold" concrete floors. (*Id.*)

Plaintiff goes on to allege that from July 29, 2022, through December 4, 2022, he received a "different food tray with reduced portions of food than the general population inmates." (*Id.*) Plaintiff lost 32 pounds "and suffered daily bouts of hunger." (*Id.*) From December 4, 2022, through December 7, 2022, Plaintiff was served "frozen inedible 4 ounce food loaf breakfast, lunch[,] and dinner meals and suffered daily bouts of hunger." (*Id.*) Plaintiff claims further that from March 18, 2022, through January 20, 2023, he was "denied classification to a general population unit and confined and segregated indefinitely without a formal or informal prisoner hearing." (*Id.*)

### 2.    Allegations Regarding Excessive Force

On July 28, 2022, Defendants Scott Kuhl, Magro, Phillips, Dilpert, and Helfman came into Plaintiff's cell while "5 to 10 additional unidentified deputies stood in and outside the open cell door ready to rush in." (*Id.*, PageID.10.) These individuals woke Plaintiff up with "verbal threats and racial epithets." (*Id.*) Defendants Magro and Scott Kuhl told Plaintiff that "if he did not get up and submit his fingerprints and mugshots he would be forced to." (*Id.*) Plaintiff responded that he did not have consent to being fingerprinted under state law. (*Id.*) Plaintiff was "then restrained

behind his back in extremely tight handcuffs under the threat of being tased by an unidentified deputy pointing a taser at him." (*Id.*)

Plaintiff was escorted to another booking cell, where he was forced to submit to a strip search and anal cavity search "in the presence of approximately 30 to 40 jail mates and 10 deputies that included a minimum of 3 female deputies." (*Id.*) Plaintiff was "dressed in a jail uniform and again restrained behind his back with extremely tight handcuffs that cut off the circulation to his hands and caused numbness and severe pain and suffering." (*Id.*)

Plaintiff was then taken to the mugshot/fingerprinting room. (*Id.*) Defendants Scott Kuhl, Magro, Phillips, Dilpert, and Helfman began to use excessive force against Plaintiff "in an effort to make him take a mugshot photograph." (*Id.*) Defendant Magro used a "one hand vice-like chokehold on Plaintiff's throat while the other four . . . simultaneously each employed single finger force with what felt like both of their hands to apply pressure to nerve points behind Plaintiff's ears, both temples[,] and under his right armpit." (*Id.*) Plaintiff lost consciousness and "was awakened sitting in a chair and being held up in place by the defendants." (*Id.*)

Defendants Scott Kuhl, Magro, and Phillips then took Plaintiff to the fingerprint scanning machine. (*Id.*, PageID.11.) Defendant Phillips held Plaintiff's right hand down on the machine "while forcefully squeezing nerve points between his index finger and thumb" while the others "again simultaneously applied pressure to nerve points." (*Id.*) Someone also used the opened right handcuff "to repeatedly stab into [Plaintiff's] right ribcage and kidney, as well as repeatedly punch the right ribcage and kidney area." (*Id.*) Plaintiff claims that "5 to 10 unidentified deputies either stood by and watched the 10[-]to[-]15[-]minute assault or assisted by operating the camera or fingerprint scan machine; however, none of them attempted to stop the assault." (*Id.*)

### 3.      Allegations Regarding Denial of Healthcare

Plaintiff goes on to allege that from March 18, 2022, through June 4, 2022, he was denied medical treatment by the BCJ provider/doctor and nursing supervisor when they "repeatedly refused to provide [Plaintiff] a prescription for a bunk, mattress, bedding, pain medications, and muscle relaxers after his numerous verbal and written complaints of physical pain and suffering." (*Id.*) Plaintiff alleges that he asked for the items on a daily basis because he was in pain 'from constantly sitting, sleeping[,] and walking/standing on a concrete floor 24/7." (*Id.*, PageID.12.) His requests were denied because he had not been classified or subjected to fingerprinting. (*Id.*) On at least 10 different occasions between March 18, 2022, and June 24, 2022, Defendant Unknown Karen refused to provide Plaintiff with a mattress, bedding, and pain medications. (*Id.*) Defendant Unknown Karen claimed that "jail rules did not allow prisoners in receiving/booking area to receive a mattress or blanket until the prisoner was classified and provided their fingerprints." (*Id.*)

On at least 2 occasions between March 18, 2022, and June 24, 2022, Defendant Unknown Party #1, a doctor, became hostile and belligerent when Plaintiff accused medical staff of conspiring with custody staff to deny him a mattress and bedding. (*Id.*) The doctor told Plaintiff to "quit acting like an idiot and do what the officers tell you to do" and "you are a fool and not very smart, give them your fingerprints or continue to suffer." (*Id.*) The doctor also denied Plaintiff's requests that she prescribe a mattress, bedding, pain medications, and muscle relaxers. (*Id.*)

Between March 18, 2022, and January 20, 2023, Defendant Unknown Party #2, the mental healthcare provider at BCJ, consistently denied Plaintiff mental health treatment. (*Id.*, PageID.13.) Plaintiff alleges that she made rounds daily, and Plaintiff would constantly ask to speak to her about "his mental, emotional[,] and psychological symptoms associated with his conditions of confinement." (*Id.*) Plaintiff also submitted several healthcare requests for mental health treatment.

(*Id.*) The provider told Plaintiff that "BCJ rules did not allow her to treat him because he was refusing to fingerprint and [had not] been classified nor exhibited suicidal tendencies." (*Id.*)

### 4.    Allegations Regarding "Denial of Security of Person"

Plaintiff goes on to state that between March 18, 2022, and January 20, 2023, he was "subjected to continuous 24/7 in cell video camera surveillance monitoring by male and female deputies, and had to perform private bodily functions daily as a result." (*Id.*) Plaintiff alleges further that he had to perform bodily functions and shower "in the presence of male and female detainees, deputies[,] and administrative staff" because the booking/receiving area cells "all contained a glass wall with a direct view inside the cell." (*Id.*) Plaintiff reiterates that he was subjected to a strip search and anal cavity search on July 28, 2022, in the presence of other BCJ detainees and male and female deputies. (*Id.*, PageID.14.)

### 5.    Allegations Regarding Supervisory Liability

Plaintiff goes on to allege that Defendants Berrien County, Bailey, and Unknown Party #16 created and used "longstanding jail conditions which constitute a municipal customary policy and led to the constitutional and human rights violations Plaintiff suffered." (*Id.*) He alleges further that Defendants Berrien County, Bailey, Unknown Party #17, Unknown Party #16, Burkes, Herbert, Unknown Party #18, Hyun, Magro, O'Brien, Scott Kuhl, Erin Kuhl, and Will "all either took direct or indirect participation in the supervision of Plaintiff" and "had the authority to, but failed to, alter or change the municipal customary policy of detaining Plaintiff under the conditions he was suffering as a pretrial detainee in their custody." (*Id.*) Plaintiff also suggests that Defendants Berrien County, Bailey, Unknown Party #17, Unknown Party #16, Burkes, Herbert, and Unknown Party #18 "all had a duty and the authority to properly supervise and train the BCJ custody and healthcare officials, but failed or refused to." (*Id.*)

Plaintiff contends that Defendants Berrien County, Bailey, Unknown Party #17, Unknown Party #16, Herbert, Unknown Party #18, Scott Kuhl, Erin Kuhl, and Magro were all directly or indirectly involved in the "July 28, 2022[,] excessive use of force to retrieve Plaintiff's fingerprints and mugshot photographs." (*Id.*, PageID.15.) Plaintiff then references an incident from September 14, 2022, when Defendants Bailey and Magro threatened and physically intimidated "to have Plaintiff restrained in handcuffs and leg irons and placed under sedation of a mind[-]altering chemical administered by healthcare nurse R. Washington . . . in a second attempt to retrieve Plaintiff's fingerprints." (*Id.*)

### 6.    Allegations Concerning Injuries

Plaintiff contends that because of the conditions of confinement he was subjected to in the booking area, he suffered the following: chronic back pain, lower back bruising and swelling, sciatic nerve pain, right knee pain, neck pain, right shoulder pain, muscle cramps, bouts of shivering, numbness, exhaustion/tiredness, sleep deprivation, migraines, hunger pangs, weight loss, dizziness, hyperventilation, frustration, anger, loneliness, humiliation, embarrassment, sadness, nervousness, grief, misery, panic, paranoia, and excessive taunting. (*Id.*, PageID.15–16.)

Plaintiff alleges the following injuries as a result of the July 28, 2022, use of excessive force: neck pain, shoulder pain, right rib bruising and swelling, throat swelling and bruising, unconsciousness, wrist swelling and lacerations, blurred vision, dizziness, migraines, left leg pain, back pain, right hand pain, fear, nervousness, panic, frustration, nightmares, etc. (*Id.*, PageID.16.) Plaintiff claims that he continues to suffer various pains, as well as emotional and psychological anguish, from this incident. (*Id.*)

### 7.    Claims for Relief and Relief Sought

Based upon the foregoing, Plaintiff asserts violations of his Eighth and Fourteenth Amendment rights. He also asserts violations of Article I, § 8, clause 10 and Article 6, clause 2 of

the United States Constitution. Plaintiff also asserts violations of the following: (1) the United States Congressional Act under the International Human Rights Conformity Act; (2) the United Nations Universal Declaration of Human Rights; (3) the United Nations International Covenant on Civil and Political Rights; (4) the United Nations Declaration on the Protection of All Persons from Being Subjected to Torture and Other Cruel, Inhumane or Degrading Treatment or Punishment; and Organization of American States American Declaration of the Rights and Duties of Man. (*Id.*, PageID.16–20.) Plaintiff's allegations regarding the strip search he was forced to endure also implicate the Fourth Amendment. Plaintiff seeks declaratory relief, as well as compensatory and punitive damages. (*Id.*, PageID.22–28.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails 'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.* at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679

(quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010)

(holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on

initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

> **A.    Claims Under the Universal Declaration of Human Rights, Various United Nations Declarations, and the Organization of American States American Declaration of the Rights and Duties of Man**

As noted above, Plaintiff purports to assert claims pursuant to these various declarations

against Defendants. First, federal courts do not recognize a private cause of action for prisoners

pursuant to the Universal Declaration of Human Rights or any of the other United Nations

declarations cited by Plaintiff. *See Sosa v. Alvarez–Machain*, 542 U.S. 692, 734–35 (2004)

(indicating that the Universal Declaration of Human Rights is aspirational only and "does not of

its own force impose obligations as a matter of international law"); *see also Ruhaak v. Comm'r of*

*Internal Revenue*, 422 F. App'x 530, 532 (7th Cir. 2011) ("And the Universal Declaration of

Human Rights is a statement of principles and not a treaty or international agreement imposing

legal obligations."); *Serra v. Lappin*, 600 F.3d 1191, 1196–97 & n.5 (9th Cir. 2010) (discussing

that the Universal Declaration of Human Rights is not a "source of justiciable rights"); *Renkel v.*

*United States*, 456 F.3d 640, 645 (6th Cir. 2006) (noting that there is no private cause of action

"under the Convention Against Torture because it is not self-executing"). Likewise, the American

Declaration of the Rights and Duties of Man fails to create any directly enforceable rights. *See*

*Garza v. Lappin*, 253 F.3d 918, 923 (7th Cir. 2001). Accordingly, Plaintiff's claims pursuant to

these various declarations will be dismissed.

> **B.    Section 1983 Claims**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right

secured by the federal Constitution or laws and must show that the deprivation was committed by

a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr.*

11

*Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### 1.    Claims for Declaratory Relief

As noted above, Plaintiff seeks declaratory relief against all Defendants. The Sixth Circuit, however, has held that transfer to another correctional facility moots a prisoner's claims for declaratory and injunctive relief. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (holding that a prisoner-plaintiff's claims for injunctive and declaratory relief became moot when the prisoner was transferred from the prison about which he complained). Here, Plaintiff is no longer confined at the Berrien County Jail, which is where he avers that Defendants are employed. Thus, Plaintiff cannot maintain his claims for declaratory relief against Defendants, and those claims will be dismissed.

### 2.    Claims Under Article I, § 8, Clause 10 of the Constitution

Plaintiff asserts claims under Article I, § 8, clause 10 of the United States Constitution. That clause delegates to Congress the power "[t]o define and punish Piracies and Felonies committed on the high Seas, and Offences against the Law of Nations." *See* U.S. Const. art. I, § 8, cl. 10. Plaintiff's complaint does not concern any acts of piracy or felonies committed on the high seas, and Plaintiff fails to set forth any allegations concerning his suggestion that Defendants have committed offenses against the "Law of Nations." These claims, therefore, will be dismissed.

### 3.    Claims Under Article VI, Clause 2 of the Constitution

Plaintiff also references Article VI, clause 2 of the United States Constitution. That clause, referred to as the Supremacy Clause, states:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. Const. art. VI, cl. 2. The Supremacy Clause, however, does not provide "a source of substantive individual rights." *See Nat'l Home Equity Mortg. Ass'n v. Face*, 322 F.3d 802, 803 (4th Cir. 2003); *see also Gustafson v. City of Lake Angelus*, 76 F.3d 778, 792 (6th Cir. 1996) (noting that "a claim premised on a violation of the Supremacy Clause through preemption is not cognizable under 42 U.S.C. § 1983"); *Whittman v. Virginia*, No. Civ. 02-1362-A, 2002 WL 32348410, at *5 (E.D. Va. Nov. 4, 2002) ("But the Supremacy Clause provides neither an implied nor an express private right of action. Moreover, the Supremacy Clause does not guarantee any federal constitutional rights and so it may not be vindicated by a private plaintiff in an action brought under 42 U.S.C. § 1983."). Accordingly, Plaintiff's claims pursuant to the Supremacy Clause will also be dismissed.

### 4.    Claims Against Defendants Rankin, Carl, and Unknown Party #3

Although Plaintiff has named Deputies Rankin and Carl, as well as Unknown Party #3 (an unknown nurse) as Defendants, he fails to mention these individuals in the body of his complaint, much less allege that they took any action against him. Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights).

The Court recognizes that throughout his complaint, Plaintiff suggests that various unknown deputies were involved in the alleged violations of his constitutional rights. Plaintiff, however, refers to those deputies as Unknown Parties and nowhere in his complaint does he include Defendants Rankin and Carl within that grouping. Plaintiff also suggests that various nurses were involved in denying him medical care, but does not mention Unknown Party #3 at all. "Summary reference to a single five-headed 'Defendants' [or staff] does not support a reasonable inference that each Defendant is liable." *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citation omitted) ("This Court has consistently held that . . . claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right." (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008))). Plaintiff's claims against Defendants Rankin, Carl, and Unknown Party #3 fall short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure and are subject to dismissal for that reason alone. *See* Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). Accordingly, the Court will dismiss Defendants Rankin, Carl, and Unknown Party #3.

### 5. Claims Against Defendants O'Brien and Unknown Parties #16, #17, and #18

Plaintiff has named Lieutenant/Sergeant O'Brien, as well as a BCJ captain, undersheriff, and jail administrator, referred to as Unknown Parties #16, #17, and #18, as Defendants in this suit. Plaintiff seeks to assert supervisory liability claims against these individuals, suggesting that they took direct or indirect participation in Plaintiff's supervision and the alleged violations of his constitutional rights.[1] (Compl., ECF No. 1, PageID.14.)

---

[1] Plaintiff also seeks to assert supervisory liability claims against other named Defendants, but as discussed *infra*, Plaintiff has set forth facts suggesting that these other individuals were personally involved in the alleged violations of his rights.

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs*., 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee,* 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Plaintiff fails to allege any facts showing that Defendants O'Brien and Unknown Parties #16, #17, and #18 encouraged or condoned the conduct of their subordinates, or authorized, approved or knowingly acquiesced in the conduct. Indeed, he fails to allege any facts at all about their conduct. His vague and conclusory allegations of supervisory responsibility are insufficient to demonstrate that these Defendants were personally involved in the events of which Plaintiff complains. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Because Plaintiff's claims against Defendants O'Brien and Unknown Parties #16, #17, and #18 appear to be premised on nothing more than respondeat superior liability, he fails to state a claim against them, and such claims will be dismissed.

### 6.    Fourth Amendment Claims

Plaintiff asserts that between March 18, 2022, and January 20, 2023, he was "subjected to continuous 24/7 in cell video camera surveillance monitoring by male and female deputies, and had to perform private bodily functions daily as a result." (Compl., ECF No. 1, PageID.13.) Plaintiff alleges further that he had to perform bodily functions and shower "in the presence of male and female detainees, deputies[,] and administrative staff" because the booking/receiving area cells "all contained a glass wall with a direct view inside the cell." (*Id.*) Plaintiff alleges further that on July 28, 2022, he was subjected to a strip search and anal cavity search in the presence of other BCJ detainees, as well as male and female deputies. (*Id.*, PageID.10.) Plaintiff suggests that Defendants Scott Kuhl, Magro, Phillips, Dilpert, Helfman, and unidentified deputies (referred to as Unknown Parties #5 through #15) were involved in these incidents. (*Id.*, PageID.18 (listing Defendants in paragraph 43).)

Both the Supreme Court and the Sixth Circuit have recognized that, under the Fourth Amendment, prisoners and detainees may be subjected to strip searches and body-cavity searches

without individualized suspicion. *See Florence v. Bd. of Chosen Freeholders*, 566 U.S. 318, 333–34 (2012) (rejecting the argument that correctional officials need reasonable suspicion to conduct visual body-cavity searches upon inmates at the time they are admitted to the general jail population); *Stoudemire v. Mich. Dep't of Corr.*, 705 F.3d 560, 575 (6th Cir. 2013) (noting that "suspicionless strip searches [are] permissible as a matter of constitutional law"); *see also Salem v. Mich. Dep't of Corr.*, 643 F. App'x 526, 529 (6th Cir. 2016). Nevertheless, strip searches "may be unreasonable by virtue of the way in which [they are] conducted." *Williams v. City of Cleveland*, 771 F.3d 945, 952 (6th Cir. 2014) (citing *Stoudemire*, 705 F.3d at 574) (holding that searches must be conducted in a manner that is reasonably related to the jail's legitimate objectives and that allegations that female prisoners were forced to sit on a chair and spread their labia in unsanitary conditions and in full view of other prisoners were sufficient to state a claim for unreasonable search and seizure). In determining the reasonableness of a search, courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted. *Stoudemire*, 705 F.3d at 572 (citing *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)).

"There is no question that strip searches may be unpleasant, humiliating, and embarrassing to prisoners, but not every psychological discomfort a prisoner endures amounts to a constitutional violation." *Calhoun v. DeTella*, 319 F.3d 936, 939 (6th Cir. 2003). The Sixth Circuit has recognized some limited circumstances in which a prison strip search may implicate the Fourth Amendment. *See, e.g.*, *Cornwell v. Dahlberg*, 963 F.2d 912, 916 (6th Cir. 1992) (recognizing the facial validity of a Fourth Amendment invasion-of-privacy claim where male prisoners were allegedly strip searched in the prison yard in the presence of other inmates and female officers); *Kent v. Johnson*, 821 F.2d 1220, 1226–27 (6th Cir. 1987) (holding that a Fourth Amendment

17

challenge to a prison policy requiring male prisoners to expose their naked bodies to regular and continuous surveillance by female officers was facially valid).

As noted above, Plaintiff suggests that he was consistently exposed to others while showering and performing bodily functions because of the glass walls of the booking/receiving cells. He also suggests that the strip search occurred in the presence of other inmates as well as male and female deputies. Plaintiff's Fourth Amendment claims, therefore, may not be dismissed on initial review.[2]

### 7.    Eighth/Fourteenth Amendment Claims

Plaintiff contends that during his incarceration at BCJ, his Eighth and Fourteenth Amendment rights were violated because he was subjected to unconstitutional conditions of confinement, subjected to a use of excessive force, and denied both medical and mental health care.

Plaintiff was a pretrial detainee during his incarceration at BCJ. Pretrial detainees "may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Thus, the limitations on punishment that appear in the Eighth Amendment do not apply to pretrial detainees. Accordingly, Plaintiff's Eighth Amendment claims will be dismissed.

Pretrial detainees are instead protected under the Due Process Clause of the Fourteenth Amendment. *See Winkler v. Madison Cnty.*, 893 F.3d 877, 890 (6th Cir. 2018). Until recently, the Sixth Circuit "analyzed Fourteenth Amendment pretrial detainee claims and Eighth Amendment

---

[2] To the extent that Plaintiff contends the strip search itself violated his Eighth Amendment rights, the Sixth Circuit has held that an Eighth Amendment claim is not cognizable when the plaintiff has not alleged any physical injury from the strip search. *See Jackson v. Herrington*, 393 F. App'x 348, 354 (6th Cir. 2010). Although Plaintiff alleges that excessive force was used against him on July 28, 2022, Plaintiff's complaint is devoid of facts suggesting that the strip search itself caused him physical injury.

prisoner claims 'under the same rubric.'" *Greene v. Crawford Cnty.*, 22 F.4th 593, 605 (6th Cir. 2022) (quoting *Brawner v. Scott Cnty.*, 14 F.4th 585, 591 (6th Cir. 2021)). However, in 2015, the Supreme Court differentiated the standard for excessive force claims brought by pretrial detainees under the Fourteenth Amendment's Due Process Clause from those brought by convicted prisoners under the Eighth Amendment. *See Kingsley v. Hendrickson*, 576 U.S. 389 (2015). In *Kingsley*, the Court held that, for purposes of an excessive force claim brought by a pretrial detainee, a "detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id.* at 396–97.

*Kingsley* left unanswered the question of "whether an objective standard applies in other Fourteenth Amendment pretrial-detainment contexts." *Brawner*, 14 F.4th at 592. In *Brawner*, the Sixth Circuit modified the second prong of the deliberate indifference test applied to pretrial detainees to require only recklessness. *Id.* at 592, 596. At issue in *Brawner* was a pretrial detainee's claim for deliberate indifference to medical needs. The Sixth Circuit held that to demonstrate deliberate indifference, "[a] pretrial detainee must prove 'more than negligence but less than subjective intent—something akin to reckless disregard.'" *Id.* at 596– 97 (quoting *Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc)); *see also Helphenstine v. Lewis Cnty., Ky.*, 60 F.4th 305, 316–17 (6th Cir. 2023) (affirming that *Kingsley*, as interpreted by *Brawner*, required courts to "lower the subjective component from actual knowledge to recklessness"). That is, a pretrial detainee must show that the defendant acted "deliberately (not accidentally), [and] also recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Brawner*, 14 F.4th at 596 (citation and quotation marks omitted).

*Brawner*, however, "left the [objective] prong untouched." *Hyman v. Lewis*, 27 F.4th 1233, 1237 (6th Cir. 2022). Under that prong, Plaintiff must still allege facts regarding an "objectively serious medical need" for purposes of his claims that he was denied medical and mental health treatment. Moreover, with respect to Plaintiff's claims concerning his conditions of confinement, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth [or Fourteenth] Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam). "[R]outine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

Given Plaintiff's allegations concerning the conditions of confinement, the use of excessive force on July 28, 2022, and the denial of medical and mental health care that he experienced while incarcerated at BCJ between March 18, 2022, and January 20, 2023, the Court concludes that Plaintiff's Fourteenth Amendment claims cannot be dismissed on initial review. These claims implicate personal involvement by Defendants Bailey, Burkes, Herbert, Magro, Scott Kuhl, Erin Kuhl, Will, Hyun, Phillips, Dilpert, Helfman, and Unknown Parties #1, #2, #4, and #5 through #15. (Compl., ECF No. 1, PageID.16–20 (listing Defendants in paragraphs 39, 40, 41, 43, 44, 45, 46, 47, and 48).) Plaintiff's claims also implicate Defendant Berrien County, as he suggests that he was subjected to the various conditions of confinement pursuant to BCJ rules and regulations that prohibited inmates that do not consent to be fingerprinted from receiving items such as a mattress and blanket, as well as from receiving mental health treatment.

## III.    Pending Motions

Plaintiff has filed a motion requesting that the United States Marshal be directed to serve his complaint, pursuant to Rule 4(c)(3) of the Federal Rules of Civil Procedure. (ECF No. 7.)

Plaintiff states that he "is unable to pay the fees and cost[s] associated with serving process on the defendants." (*Id.*, PageID.162.) Although Plaintiff paid the full filing fee for this action, his financial documents indicate that as of October 7, 2024, Plaintiff had an average monthly account deposit of $6.87 and had no spendable funds in his prisoner account. (ECF No. 6-1, PageID.119.) The Court, therefore, will deem Plaintiff indigent for purposes of Rule 4(c)(3) and will grant his motion to have the United States Marshal serve the remaining Defendants.

Plaintiff has also filed a motion requesting a copy of this Court's Local Civil Rules of Procedure and for the fee for such a copy to be waived. (ECF No. 9.) Indigent inmates, however, do not have "a right to have documents copied . . . at government expense." *In re Richard*, 914 F.2d 1526, 1527 (6th Cir. 1990). Moreover, this Court's Local Civil Rules of Procedure should be available for Plaintiff to review at his facility's law library. Accordingly, Plaintiff's motion requesting a copy of the Local Rules at no cost to him (ECF No. 9) will be denied.

## <u>Conclusion</u>

Having conducted the review required by the PLRA, the Court determines that Defendants Rankin, Carl, O'Brien, Unknown Party #3, Unknown Party #16, Unknown Party #17, and Unknown Party #18 will be dismissed for failure to state a claim, under 28 U.S.C. § 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Berrien County, Bailey, Burkes, Herbert, Magro, Scott Kuhl, Erin Kuhl, Will, Phillips, Dilpert, Helfman, Hyun, Unknown Party #1, Unknown Party #2, Unknown Party #4, Tarnowski, and Unknown Parties #5 through #15: (1) Plaintiff's claims under the Universal Declaration of Human Rights, various United Nations declarations, and the American Declaration of the Rights and Duties of Man; (2) Plaintiff's claims for declaratory relief; (3) Plaintiff's claims under Article I, § 8, clause 10 of the Constitution; (4) Plaintiff's claims under

Article VI, clause 2 (the Supremacy Clause) of the Constitution; and (5) Plaintiff's Eighth Amendment claims.

Plaintiff's Fourth and Fourteenth Amendment claims for monetary damages against Defendants Berrien County, Bailey, Burkes, Herbert, Magro, Scott Kuhl, Erin Kuhl, Will, Phillips, Dilpert, Helfman, Hyun, Unknown Party #1, Unknown Party #2, Unknown Party #4, Tarnowski, and Unknown Parties #5 through #15 remain in the case. The Court will serve the complaint against Defendants Berrien County, Bailey, Burkes, Herbert, Magro, Scott Kuhl, Erin Kuhl, Will, Phillips, Dilpert, Helfman, Hyun, Unknown Party #1, Unknown Party #2, Unknown Party #4, Tarnowski, and Unknown Parties #5 through #15. The Court will also grant Plaintiff's motion to have the United States Marshal serve the complaint (ECF No. 7) and deny his motion requesting a copy of the Local Civil Rules at no cost (ECF No. 9).

An order consistent with this opinion will be entered.


Dated:   __November 25, 2024__                    __/s/ Robert J. Jonker_____
                                                  Robert J. Jonker
                                                  United States District Judge